UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TYLIER WARD,

                Plaintiff,

v.

UNKNOWN LOVEBERRY, et al.,

                Defendants.
_____/

Case No. 1:22-cv-1033

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Jackson, John Doe #1, and Jane Does #1 and #2.  The Court will

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

also dismiss, for failure to state a claim, the following claims against remaining Defendants Loveberry and Mihms: (1) Plaintiff's Eighth Amendment claims premised upon verbal and sexual harassment; (2) Plaintiff's Eighth Amendment claims premised upon the denial of medical care following Plaintiff's medical evaluation; and (3) Plaintiff's Fourteenth Amendment claims. Plaintiff's First Amendment retaliation claims and Eighth Amendment excessive force claims against Defendants Loveberry and Mihms, as well as his Eighth Amendment claim premised upon Defendant Loveberry's denial of medical attention immediately following the use of force, remain in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Corrections Officers Unknown Loveberry, Kyle Mihms, and Unknown Jackson. Plaintiff also names Shift Commander John Doe #1 and Registered Nurses Jane Does #1 and #2 as Defendants.

Plaintiff alleges that on March 26, 2022, Defendant Mihms asked, "Is it true that all black guys have big d****?" (ECF No. 1, PageID.6.) Plaintiff responded, "Look, I don't play with C/Os and I'm not into homosexuality. I will be writing a [Prison Rape Elimination Act (PREA) complaint] on you." (*Id.*) Defendant Mihms replied, "If you say anything I'll have Loveberry beat come [and] beat your black ass." (*Id.*)

4

Two days later, on March 28, 2022, Plaintiff had his hand in the food slot of his cell and was asking to see health services for chest pains.[2] (*Id.*)  Defendant Loveberry came up to his cell and stated, "Look here n*****, you are going to shut this f***ing food slot." (*Id.*)  Plaintiff responded that he would not shut the food slot until he saw medical staff.  (*Id.*)  Defendant Loveberry then opened the cell door, jamming Plaintiff's arm into the sliding door.  (*Id.*)  Defendant Loveberry closed the door and began repeatedly slamming Plaintiff's hand between the food slot.  (*Id.*)  Plaintiff's hand went numb and swelled to the size of a grapefruit.  (*Id.*)  Plaintiff yelled out that he needed a nurse because Defendant Loveberry broke his hand.  (*Id.*)  Defendant Loveberry stepped back and said, "Don't worry n***** you got more ass beatings coming to you." (*Id.*)  Plaintiff states that he was then "denied healthcare." (*Id.*)

After making several complaints to custody staff, Plaintiff asked Defendant Jane Doe #1 for medical attention during second shift medical rounds. (*Id.*)  Plaintiff was evaluated and received a prescription for Tylenol and an ice detail "after leaving the hospital." (*Id.*)  He avers, however, that after that day, he never received pain medication and ice from Defendant Jane Doe #1 again.  (*Id.*)  Plaintiff indicates that he was diagnosed with nerve damage in his hand.  (*Id.*)  Plaintiff sent a kite to Defendant Jane Doe #2, a supervisor, who responded, "Prisoners who hold food slots

---

[2] Plaintiff's description suggests that he took his food slot "hostage." An inmate takes his food slot "hostage" by preventing it from being closed, typically by placing his hand or arm in the slot. *See, e.g.*, *Earby v. Ray*, 47 F. App'x 744, 745 (6th Cir. 2002). It is against prison rules and a common form of prison misbehavior. *See Annabel v. Armstrong*, No. 1:09-cv-796, 2011 WL 3878379, at *4 n.5 (W.D. Mich. Mar. 30, 2011), *report and recommendation adopted*, 2011 WL 3878385 (W.D. Mich. Aug. 31, 2011).

to demand medical treatment get denied." (*Id.*, PageID.7.)  Plaintiff states he did not receive further medical attention for his hand. (*Id.*)

On March 30, 2022, Defendant Mihms was assigned to Plaintiff's housing unit and told him, "I'm going to beat your ass next chance I get for lying on me." (*Id.*) Plaintiff reported the incident to Defendant John Doe #1, telling him that Defendants Mihms and Loveberry continued to threaten his health and safety. (*Id.*)  According to Plaintiff, Defendant John Doe #1 responded, "You deserve whatever you got coming prisoner Ward." (*Id.*)  Plaintiff alleges that Defendants Mihms, Lovevberry, and Jackson continued to deny him prescribed medical treatment, and that Defendant John Doe #1 "refused to correct his subordinates or request healthcare treatment to stop the numbing pain on Plaintiff's injured hand." (*Id.*)

Based on the foregoing, Plaintiff contends that Defendants Mihms, Loveberry, Jackson, and Defendant John Doe #1 violated his First Amendment rights by retaliating against Plaintiff for stating his intent to file a PREA complaint against Defendant Mihms. (*Id.*, PageID.5.)  Plaintiff also asserts that Defendant Loveberry used excessive force in violation of the Eighth Amendment after Defendant Mihms told him to, and that Defendants Jackson and John Doe #1 failed to do anything to stop or impede the assault. (*Id.*)  Plaintiff claims further that Defendants violated his Eighth Amendment rights by not providing prescribed medical treatment to him. (*Id.*)  Plaintiff also mentions violations of his Fourteenth Amendment rights. (*Id.*, PageID.8.)  Finally, the Court construes Plaintiff's complaint to assert an Eighth Amendment claim against Defendants Mihms and Loveberry premised upon verbal

6

harassment, as well as an Eighth Amendment claim against Defendant Mihms premised upon sexual harassment. Plaintiff seeks compensatory and punitive damages, as well as declaratory relief. (*Id.*)

## II.    **Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted above, Plaintiff asserts violations of his First, Eighth, and Fourteenth Amendment rights.

## A.   First Amendment Retaliation Claims

Plaintiff contends that Defendants Mihms, Loveberry, Jackson, and Defendant John Doe #1 violated his First Amendment rights by retaliating against Plaintiff for stating his intent to file a PREA complaint against Defendant Mihms.  (ECF No. 1, PageID.5.)  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the

8

defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.    Defendants Mihms and Loveberry

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral.  *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance).  Thus, Plaintiff engaged in protected conduct when he told Defendant Mihms that he intended to file a PREA complaint against him.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  *Thaddeus-X*, 175 F.3d at 396.  The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

9

Here, Plaintiff alleges that after he stated his intent to file a PREA complaint, Defendant Mihms threatened, "If you say anything I'll have Loveberry come [and] beat your black ass." (ECF No. 1, PageID.6.)  Two days later, Defendant Loveberry repeatedly slammed Plaintiff's hand in the food slot, injuring it. (*Id.*)  Plaintiff alleges further that Defendant Mihms threatened to beat Plaintiff again for "lying on [him]." (*Id.*, PageID.7.)  Defendant Mihms's specific threats to beat Plaintiff satisfy the adverse action requirement. *See Thaddeus-X*, 175 F.3d at 396, 398.  Defendant Loveberry's use of force also constitutes adverse action.  Moreover, Defendants Mihms's and Loveberry's adverse actions were temporally proximate to Plaintiff's statement of intent to file a PREA complaint and conditioned on Plaintiff's protected conduct.  Plaintiff, therefore, has adequately alleged First Amendment retaliation claims against Defendants Mihms and Loveberry.

### 2.    Defendants Jackson and John Doe #1

Plaintiff appears to suggest that Defendants Jackson and John Doe #1 retaliated against him by not taking action to stop the additional threats by Defendants Mihms and Loveberry after Plaintiff complained about their behavior.

While Plaintiff engaged in protected conduct by complaining about Defendant Mihms and Loveberry's behavior, many courts, including this one, have held that the denial or refusal to process a grievance is not an adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases); *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 26, 2016); *Ross v. Westchester Cnty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (discussing that the refusal to file a grievance is,

10

without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (concluding that the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (finding that the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (discussing that the rejection or denial of prison grievances does not constitute an adverse action for purposes of a retaliation claim).  Moreover, § 1983 liability may not be imposed simply because a supervisor failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).  Thus, Plaintiff does not adequately allege adverse action with respect to his claim that Defendants Jackson and John Doe #1 failed to act in response to his complaints.  Because Plaintiff fails to satisfy the second element, his First Amendment retaliation claims against Defendants Jackson and John Doe #1 will be dismissed.

B.      **Eighth Amendment Claims**

Plaintiff contends that Defendants violated his Eighth Amendment rights in various ways.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."

*Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1.     Excessive Force

Plaintiff contends that on March 26, 2022, Defendant Mihms threatened to have Defendant Loveberry assault Plaintiff because Plaintiff stated an intent to file a PREA complaint against Defendant Mihms. (ECF No. 1, PageID.6.) Two days later, Defendant Loveberry repeatedly slammed Plaintiff's hand in the cell food slot. (*Id.*) Plaintiff's claim must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the

constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g., Whitley v. Albers*, 475 U.S. 312, 321–22 (1986).

Not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson*, 503 U.S. at 9 (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights" (internal quotation marks omitted)).  On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)).  Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011).  Given Plaintiff's allegations against Defendants Mihms and Loveberry, the Court concludes that Plaintiff has set forth plausible Eighth Amendment excessive force claims against them.[3]

---

[3] As noted *supra*, Plaintiff's description of events suggests that he was engaging in misconduct by placing his hand through the food slot to obtain medical care for a self-described emergency. However, a determination that Plaintiff was engaging in misconduct would not necessarily foreclose the possibility that Defendant Loveberry's use of force was excessive.

### 2.    Verbal and Sexual Harassment

The Court has construed Plaintiff's complaint to assert Eighth Amendment claims premised upon verbal harassment and threats made by Defendants Mihms and Loveberry, as well as the verbal sexual harassment by Defendant Mihms.

Plaintiff alleges that on March 28, 2022, Defendant Loveberry twice referred to him as a "n*****" and told him that he had "more ass beatings coming to [him]." (ECF No. 1, PageID.6.)  He also avers that on March 30, 2022, Defendant Mihms threatened to "beat [Plaintiff's] ass next chance [he got] for lying on [him]."  (*Id.*, PageID.7.)  Plaintiff contends that Defendants Loveberry and Mihms continued to threaten him after that time.  (*Id.*)  While unprofessional, allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment.  *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  *Id.*  The Court, therefore, will dismiss any Eighth Amendment claims premised upon verbal harassment that Plaintiff asserts against Defendants Mihms and Loveberry.

Plaintiff also contends that on March 26, 2022, Defendant Mihms asked, "Is it true that all black guys have big d****?"  (ECF No. 1, PageID.6.)  This alleged sexual harassment requires a closer look.  "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden

by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (citations omitted).

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, some courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (finding that,

16

where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault).

In contrast, the Sixth Circuit has held that ongoing, coercive verbal harassment may rise to sexual abuse that violates the Eighth Amendment. *Rafferty*, 915 F.3d at 1095.  The *Rafferty* court found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by repeatedly demanding that the prisoner expose herself and masturbate while the official watched and intimidated her into complying.  *Id.* at 1096.  The court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse.  *Id.*

*Rafferty*, however, is distinguishable from Plaintiff's claim.  Plaintiff alleges only that Defendant Mihms made one comment.   Under these circumstances, Defendant Mihms's comment, while offensive, did not evidence the sort of coercive sexual demand at issue in *Rafferty*.  As a result, the alleged sexual harassment falls short of the severity necessary to state an Eighth Amendment claim.  *Rafferty*, 915 F.3d at 1095.

### 3.    Defendants Jackson and John Doe #1

Plaintiff faults Defendants Jackson and John Doe #1 for failing to do anything to stop or impede the "retaliatory assault" by Defendants Mihms and Loveberry. (ECF No. 1, PageID.5.)  Plaintiff also suggests that they failed to intervene to stop further threats by Defendants Mihms and Loveberry after the assault.   (*Id.*, PageID.7.)  Plaintiff's claim may also be categorized as one for supervisory liability against Defendants Jackson and John Doe #1.  Regardless of the theory on which it

17

is based, this Court finds that Plaintiff fails to state a claim against Defendants Jackson and John Doe #1 premised upon a failure to intervene and stop the alleged behavior by Defendants Mihms and Loveberry.

### a.    Supervisory Liability

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee*, 199 F.3d at 300. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts from which the Court could infer that Defendants Jackson and John Doe #1 were aware of the threat of assault by Defendant Mihms and the use of force by Defendant Loveberry at the time they occurred, let alone that Defendants Jackson and John Doe #1 encouraged or condoned the conduct, or authorized, approved, or knowingly acquiesced in the conduct so as to have caused the alleged constitutional violation.  Plaintiff indicates that he reported the use of force after it occurred, not when Defendant Mihms threatened to have Defendant Loveberry assault him.

Plaintiff also vaguely suggests that Defendants Jackson and John Doe #1 failed to stop further threats by Defendants Mihms and Loveberry.  (ECF No. 1, PageID.7.)  He asserts that Defendant John Doe #1 told him, "You deserve whatever you got coming prisoner Ward." (*Id.*)  While Defendant John Doe #1's comment could

19

be construed as acquiescing in the threats and harassment by Defendants Mihms and Loveberry, as discussed *supra*, the verbal harassment and threats do not amount to a constitutional violation. In any event, as noted above, a defendant cannot be held liable under § 1983 where the defendant's only involvement in allegedly unconstitutional conduct is "the failure to act." *See Shehee*, 199 F.3d at 300.  Failing to intervene on a prisoner's behalf does not amount to active unconstitutional behavior. *Id.*  In light of the foregoing, the Court concludes that Plaintiff has failed to set forth plausible supervisory liability claims against Defendants Jackson and John Doe #1 premised upon a failure to stop Defendants Mihms and Loveberry's behavior, and such claims will be dismissed.

### b.    Failure to Intervene

An officer is liable for another officer's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)); *accord Alexander v. Carter ex rel. Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018).  For the same reasons discussed in the preceding section, Plaintiff's allegations do not support the inference that Defendants Jackson and John Doe observed or had reason to know that Defendant Mihms had threatened to have Defendant Loveberry assault Plaintiff and that Defendant Loveberry used excessive force against Plaintiff two days after that threat occurred.  Therefore, the Court will dismiss Plaintiff's claims against Defendants Jackson and John Doe #1 for failure to intervene.

20

### 4.      Deliberate Indifference to Medical Needs

Plaintiff contends that all Defendants were deliberately indifferent to his need for medical treatment after his hand was injured in the food slot.  (ECF No. 1, PageID.5.)  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976).   The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer*, 511 U.S. at 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d

531, 539–40 (6th Cir. 2008).  Obviousness, however, is not strictly limited to what is detectable to the eye.  Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear.  *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care.  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).  Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Farmer,* 511 U.S. at 835.  "[T]he official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.  To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105.  As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### a.    Medical Staff (Defendants Jane Does #1 and #2)

Plaintiff alleges that after Defendant Loveberry's use of force, he asked Defendant Jane Doe #1 for medical attention during second shift medical rounds. (ECF No. 1, PageID.6.)  Plaintiff was evaluated and received a prescription for Tylenol and ice after "leaving the hospital." (*Id.*)  He contends, however, that after

24

that day, he never received pain medication and ice from Defendant Jane Doe #1. (*Id.*)

The facts alleged by Plaintiff, however, do not support an inference of deliberate indifference by Defendant Jane Doe #1.  Nothing in the complaint suggests that Defendant Jane Doe #1 was the individual who prescribed Plaintiff the Tylenol and ice.  Even if she were, it is possible that her failure to provide such after the initial evaluation was intentional, but Plaintiff does not allege any facts to support that inference.  It is also possible that the failure was inadvertent and Defendant Jane Doe #1 was simply negligent.  Furthermore, while Plaintiff vaguely alleges that Defendant Jane Doe #1 did not provide him pain medication and ice after his evaluation, his complaint is devoid of facts suggesting that he had any further interactions with her after that day.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679.  Here, there is nothing in Plaintiff's complaint that might distinguish Defendant Jane Doe #1's purported deliberate indifference to Plaintiff's needs from simple negligence, which *Farmer* has held is not enough for an Eighth Amendment claim.  *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").  The Court, therefore, will dismiss Plaintiff's Eighth Amendment claim against Defendant Jane Doe #1.

Plaintiff also alleges that he sent a kite to Defendant Jane Doe #2, who was Defendant Jane Doe #1's supervisor, and was told that "prisoners who hold food slots to demand medical treatment get denied." (ECF No. 1, PageID.7.)  He contends that he "did not receive further adequate medical attention for his injured hand." (*Id.*)  Again, the facts alleged by Plaintiff do not support an inference of deliberate indifference.  Plaintiff's complaint is devoid of facts suggesting that he detailed his injury and need for pain medication and ice in the kite to Defendant Jane Doe #2 and that she disregarded his needs. Plaintiff seeks to hold Defendant Jane Doe #2 liable solely based upon her response to his kite.  As discussed *supra*, a defendant cannot be held liable under § 1983 where the defendant's only involvement in allegedly unconstitutional conduct is "the failure to act." *See Shehee*, 199 F.3d at 300.  Failing to intervene on a prisoner's behalf does not amount to active unconstitutional behavior. *Id.*  Plaintiff's Eighth Amendment claim against Defendant Jane Doe #2 will, therefore, be dismissed.

### b.    Custody Officers (Defendants Loveberry, Mihms, Jackson, and John Doe #1)

Plaintiff's complaint suggests that Defendant Loveberry denied him medical treatment immediately after he slammed Plaintiff's hand in the food slot. (ECF No. 1, PageID.6.)  Plaintiff contends that he yelled out that he needed a nurse because Defendant Loveberry broke his hand. (*Id.*)  Plaintiff alleges that his hand swelled to "the size of a grapefruit and went numb" because Defendant Loveberry repeatedly slammed it in the food slot. (*Id.*)

26

The Court presumes for purposes of screening that the injuries to Plaintiff's hand constitute a serious medical need.  Plaintiff's complaint explicitly alleges that he needed medical attention and that his request was ignored by Defendant Loveberry.  Although Plaintiff has by no means proven deliberate indifference, at this stage of the proceedings, taking Plaintiff's allegations as true and in the light most favorable to him, Plaintiff's Eighth Amendment claim premised upon Defendant Loveberry's denial of medical attention immediately following the use of force may not be dismissed on initial review.

Plaintiff's complaint indicates that he was ultimately evaluated after asking Defendant Jane Doe #1 for medical attention while she was conducting second shift med rounds.  (ECF No. 1, PageID.6.)  Plaintiff contends, however, that following that evaluation, Defendants Mihms, Loveberry, and Jackson denied him prescribed health care treatment, and that Defendant John Doe #1 "refused to correct his subordinates or request healthcare treatment to stop the numbing pain on Plaintiff's injured hand." (*Id.*, PageID.7.)  As an initial matter, Plaintiff's conclusory allegations are not supported by facts from which the Court could infer that Defendants Mihms, Loveberry, Jackson, and John Doe #1 were aware that Plaintiff required further medical treatment and disregarded that need.  *See Farmer*, 511 U.S. at 837.  In any event, administrative or custody officials who have no training or authority to supervise healthcare officials cannot be held liable for those officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (finding that a custody officer was entitled to rely on medical provider's judgment); *Smith v. Cnty. of*

*Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials).  Plaintiff's Eighth Amendment claims against Defendants Mihms, Loveberry, Jackson, and John Doe #1 that are premised upon the denial of medical care following Plaintiff's evaluation by the medical department will, therefore, be dismissed.

### C.    Fourteenth Amendment Claims

Plaintiff also vaguely asserts that Defendants violated his Fourteenth Amendment rights.  (ECF No. 1, PageID.8.)  To the extent that Plaintiff intended to raise a substantive due process claim regarding Defendants' conduct, he fails to state such a claim.  "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'"  *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).  "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used."  *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).  "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'"  *Range v. Douglas*, 763

28

F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833,

846–47 (1998)).

"Where a particular [a]mendment 'provides an explicit textual source of

constitutional protection' against a particular sort of government behavior, 'that

[a]mendment, not the more generalized notion of substantive due process, must be

the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994)

(quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth

Amendment, not substantive due process, provides the standard for analyzing claims

involving unreasonable search or seizure of free citizens).  If such an amendment

exists, the substantive due process claim is properly dismissed.  *See Heike v. Guevara*,

519 F. App'x 911, 923 (6th Cir. 2013).   In this case, Plaintiff's claims regarding

retaliation, use of excessive force, and deliberate indifference to medical needs are

properly analyzed under the First and Eighth Amendments.  *See supra* Parts II.A–B.

Consequently, any intended substantive due process claims will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the

Court determines that Defendants Jackson, John Doe #1, and Jane Does #1 and #2

will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and

1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a

claim, the following claims against the remaining Defendants Loveberry and Mihms:

(1) Plaintiff's Eighth Amendment claims premised upon verbal and sexual

harassment; (2) Plaintiff's Eighth Amendment claims premised upon the denial of

medical care following Plaintiff's evaluation by the medical department; and (3)

29

Plaintiff's Fourteenth Amendment claims. Plaintiff's First Amendment retaliation claims and Eighth Amendment excessive force claims against Defendants Loveberry and Mihms, as well as his Eighth Amendment claim premised upon Defendant Loveberry's denial of medical attention immediately following the use of force, remain in the case.

An order consistent with this opinion will be entered.


Dated:  November 30, 2022                    /s/ Phillip J. Green
                                             PHILLIP J. GREEN
                                             United States Magistrate Judge